IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE HOUGH, | ) | CASE NO. 1:12 CV 2943 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN SHELDON, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -4-
      A.     Underlying facts, trial and sentence . . . . . . . . . . . . . . . . . . . . . . . . . . .   -4-
      B.     Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -6-
           1.   Ohio court of appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -6-
           2.   The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -7-
      C.     Post-conviction petition and delayed post-conviction petition . . . . . . . .   -8-
      D.     Rule 26(B) application to re-open the direct appeal . . . . . . . . . . . . . . .   -11-
      E.     Motion for a writ of mandamus and/or procedendo; delayed application for
            reconsideration of direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -12-
      F.     Other filings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -14-
      G.     Federal habeas petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -14-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -17-
      A.     Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -17-
      B.     Standard of review – AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . .   -18-
      C.     Application of standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -21-
           1.   Ground one – raising a sufficiency of the evidence claim – should be
             denied on the merits after AEDPA review because the decision of the
             Ohio appeals court in this regard was not an unreasonable application
             of the clearly established federal law of *Jackson v. Virginia*. . .   -21-
           2.   Ground two – ineffective assistance of trial counsel – should be denied
             on the merits after AEDPA review because the decision of the Ohio
             appeals court was not an unreasonable application of the clearly
             established federal law of *Strickland v. Washington*. . . . . . . . .   -26-

3.      Ground five – ineffective assistance of appellate counsel – should be denied on the merits because the decision of the Ohio appeals court in adjudicating this claim was an unreasonable application of the clearly established federal law of *Strickland* and *Jones v. Barnes*, nor was it contrary to the clearly established federal law of *Darden v. Wainwright*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -30-

4.      Ground four – judicial bias – should be denied on the merits because the state court decision in this regard was not an unreasonable application of the clearly established federal law of *Liteky v. United States*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -37-

5.      Having waived further review of grounds three, four, and seven, these grounds should now be dismissed. . . . . . . . . . . . . . . . . . . . . . . . -41-

6.      As noted above, there is no basis for holding an evidentiary hearing, nor for the appointment of counsel. . . . . . . . . . . . . . . . . . . . . . . . -42-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -42-

## Introduction

Before me by referral[1] is the amended *pro se* petition of Terrance Hough for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Hough is currently incarcerated by the State of Ohio at the Toledo Correctional Institution in Toledo, Ohio.[3] He is serving three terms of life imprisonment without the possibility of parole, plus an additional term of 23 years, all imposed in 2008 by the Cuyahoga County Court of Common Pleas after Hough's conviction

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Jack Zouhary in a non-document order entered on November 15, 2013.

[2] ECF # 10.

[3] *Id.* at 1.

at a jury trial of three counts of aggravated murder and two counts of attempted murder, with mass murder and gun specifications.[4]

In his petition, Hough advances seven grounds for relief.[5] The State in its return of the writ argues that three of the grounds should be dismissed as procedurally defaulted, while the remaining four grounds should be denied on the merits.[6] As noted, Hough has filed a traverse where he admits that three grounds for relief are procedurally defaulted and so waives these grounds.[7] He otherwise contends that the remaining four grounds for relief should be granted because the Ohio court's decisions on these claims were an unreasonable application of clearly established federal law.[8] He further states that "if" this Court should decide that an evidentiary hearing is "necessary," he requests the appointment of counsel.[9]

For the reasons that follow, I will recommend that grounds three, four, and seven be dismissed as waived by Hough due to procedural default and that the remaining grounds be denied on the merits after AEDPA review. I further recommend that no evidentiary hearing be conducted and consequently that no counsel be appointed.

---

[4] *Id.*

[5] ECF # 10 at 8, 14, 19, 26, 30, 34, and 43.

[6] ECF # 17.

[7] ECF # 22 at 2.

[8] *Id.* at 3-60.

[9] *Id.* at 61.

# Facts

**A.    Underlying facts, trial and sentence**

The following facts were found by the Ohio appeals court on its review of the record and are so presumed correct by the federal habeas court.[10]

Appellant, Terrance Hough, appeals his convictions for aggravated murder and attempted murder claiming the state did not show that he acted with prior calculation and design, that the state introduced improper "other acts" and victim-impact evidence, and that his counsel was ineffective. After a thorough review of the record and based on the following case law, we affirm appellant's convictions.

On July 4, 2007, a group of friends were watching the city of Cleveland's fireworks display. Following the display, Jacob Feichtner, Katherine Rosby, Bruce Anderson, Donald Walsh, Katherine Nicholas, Mary Ellen Skora, and Valorie Skora went to the home of Jacob Feichtner's father on Sky Lane Drive in Cleveland. They arrived at approximately 11:00 p.m., and Jacob and Donald began to light off a few fireworks of their own. The rest of the group watched from the front lawn and driveway. Neighbors in at least two houses across the street were outside to watch the fireworks display as well. Sometime before midnight, after the display had wound down, Valorie went inside the Feichtners' home, the neighbors went inside their homes, and Mary Ellen left to go home.

Appellant lived next door to the Feichtners. Just after midnight, he left his home with a .40 caliber Beretta semiautomatic handgun loaded with nine hollow-point rounds of ammunition. He crossed his yard and approached Jacob Feichtner, who was standing in the Feichtners' driveway. Appellant stated, "You fucking kids won't be doing this shit no more," or "I bet you guys won't be doing this anymore." Jacob responded, "What are you going to do? Shoot me? Put the gun down and go back inside." Upon hearing Jacob's statement, appellant raised his gun and shot Jacob once in the chest. Jacob fell backwards

---

[10] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). I also note here that Hough has accepted the facts as found by the Ohio appeals court. ECF # 22 at 2.

-4-

and shouted, "Man you just fucking shot me." Appellant responded by shooting Jacob in the chest twice more, killing him.

Katherine Rosby was seated next to where Jacob was standing. Mistaking the gunshots for firecrackers, she tucked her head down by her legs and asked if Jacob was setting off firecrackers behind her back. Appellant shot her twice in the back, killing her. Bruce Anderson, who was seated next to Ms. Rosby, tried to roll out of the way, but appellant shot him twice in the back, killing him.

With every shot, appellant shouted "yeah." Within moments, three people had been shot and killed in the Feichtners' driveway. Appellant then turned and began walking back toward his home.

Katherine Nicholas, who was on the Feichtners' front lawn, began screaming. Appellant turned and took aim at Ms. Nicholas. Her fiancé, Donald Walsh, ran to her and pushed her out of the way. Walsh was hit in his left arm by appellant's eighth shot, shattering the bones in his arm. Appellant fired his last round at the pair and hit Ms. Nicholas in her finger. Appellant then shrugged his shoulders and walked back to his home, leaving behind the five people who had been in the Feichtners' yard that night-three dead or dying in the driveway and two injured and struggling to get inside the Feichtners' house.

Down the street on Sky Lane Drive, off-duty Cleveland police detective Joseph Bovenzi heard what he knew to be gunshots. He retrieved a gun from inside his home and headed toward the area where he thought the shots had originated. Det. Bovenzi arrived in the front yard of the Feichtners' home and was directed to appellant's house next door in his search for the gunman. He found appellant seated at the kitchen table. Det. Bovenzi asked appellant what had happened and appellant responded, "I snapped. I snapped. I shot those people. Did I kill them?" Appellant was arrested.

A Cuyahoga County grand jury returned a capital indictment against appellant charging him with three counts of aggravated murder with prior calculation and design in violation of R.C. 2903.01(A), with mass murder and firearm specifications; and two counts of attempted murder in violation of R.C. 2903.02 and R.C. 2923.02.

Trial began on April 15, 2008 and concluded on May 15, 2008 with verdicts of guilty on all charges. The mitigation phase of the trial began on May 20, 2008. At its conclusion, the jury recommended life without parole. The judge sentenced appellant to a life sentence for each count of aggravated murder, ten years for each count of attempted murder, and three years for the firearm specifications, all to be served consecutively.[11]

## B.    Direct appeal

### 1.    *Ohio court of appeals*

Hough, *pro se*, timely[12] filed a notice of appeal with the Ohio appeals court.[13] In the

brief in support, filed later with new counsel, Hough raised the following four assignments

of error:

**First Assignment of Error:** The evidence cannot sustain the element of prior calculation and design for the three convictions of Aggravated Murder, R.C. 2903.01(A).

**Second Assignment of Error:** The trial court erred by allowing prejudicial other acts evidence to be introduced to the jury.

**Third Assignment of Error:** The trial court erred by permitting the jury to consider victim-impact evidence in the culpability phase of trial.

**Fourth Assignment of Error:** The appellant was denied effective assistance of counsel at trial.[14]

---

[11] ECF # 17-2 (state court record), at 164-67.

[12] *Id.*, at 92.

[13] Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within 30 days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007). The conviction was final on May 28, 2008, and the notice of appeal was filed on June 23, 2008, making the appeal timely.

[14] ECF # 17-2, at 94, 99.

The State filed a responsive brief,[15] and then, on June 28, 2010, the Ohio appeals court affirmed the judgment of the trial court.[16]

**2.** **_The Supreme Court of Ohio_**

On July 22, 2010, Hough, _pro se_, filed a notice of appeal with the Supreme Court of Ohio.[17] In his supporting jurisdictional memorandum,[18] Hough asserted the following four propositions of law:

> **Proposition of Law No. I:** The evidence cannot sustain the element of prior calculation and design for the three convictions of Aggravated Murder, R.C. § 2903.01(A).
>
> **Proposition of Law No. II:** Trial court erred by allowing prejudicial other acts evidence to be introduced to the jury.
>
> **Proposition of Law No. III:** Trial court erred by permitting the jury to consider victim-impact evidence in the culpability phase of trial.
>
> **Proposition of Law No. IV:** The appellant was denied effective assistance of counsel.[19]

---

[15] _Id._, at 139.

[16] The decision here was corrected twice _nunc pro tunc_ for clerical errors. _Id._, at 162-213.

[17] _Id._, at 236.

[18] _Id._, at 238.

[19] _Id._, at 239.

The State filed a response,[20] and on October 13, 2010, the Supreme Court of Ohio denied leave to appeal, dismissing the case as not involving any substantial constitutional question.[15]

### C.      Post-conviction petition and delayed post-conviction petition

In December, 2009, while the direct appeal was pending in the Ohio courts, Hough, *pro se*, filed a petition for post-conviction relief setting out 14 grounds for relief as the State was able to discern from the text of a lengthy narrative.[16] Hough then sought to amend his petition to raise yet another ground for relief.[17] The trial court denied Hough's request to amend the petition on January 4, 2010.[18] Hough did not appeal from these decisions nor include any issue raised in a subsequent filing.[19]

More than seven months after filing the first post-conviction petition, Hough, *pro se*, moved to file a delayed petition for post-conviction relief[20] along with a second

---

[20] *Id.*, at 280.

[15] *Id.*, at 297.

[16] *Id.*, at 298.

[17] *Id.*, at 339.

[18] *Id.*, at 341. Although the appeals court later stated that the petition was also denied by the trial court, the record does not reflect that fact. ECF # 17-3, at 514. Instead, it appears that the prosecution requested additional time to respond and after no response was received from the court, the matter was left unresolved. *See*, *id.*, at 357.

[19] *See*, ECF # 17 at 12.

[20] ECF # 17-2, at 342.

-8-

post-conviction petition[21] that essentially restated the same issues as were presented in the first post-conviction petition and in the proposed amendment. On August 2, 2010, the trial court denied the motion for leave to file the delayed petition[22] and the motion to vacate the judgment.[23]

Hough, *pro se*, responded with a motion asking the trial court to issue findings of fact and conclusions of law in connection with the denial of the post-conviction motion[24] and, approximately two weeks later, with another motion seeking to supplement the post-conviction petition[25] and yet an additional motion seeking the recusal of the trial judge.[22] The trial court then did issue findings of fact and conclusions of law for the denial of the post-conviction motion[23] before denying the remaining motions.[24]

Hough, in turn, both appealed from the issuance of the findings of fact and conclusions of law,[25] as well as filed a second motion for findings of fact and conclusions of

---

[21] ECF # 17-3, at 355.

[22] *Id.*, at 450.

[23] *Id.*, at 451.

[24] *Id.*, at 452.

[25] *Id.*, at 454.

[22] *Id.*, at 468.

[23] *Id.*, at 470.

[24] *Id.*, at 471.

[25] *Id.*, at 478.

law.[26] The trial court denied the second motion for findings of fact and conclusions of law,[27] and, after numerous filings,[28] on July 28, 2011, the Ohio appeals court affirmed the decision of the trial court. noting in the appellate opinion that Hough's motion to the trial court was untimely and so properly denied by the court, and further that the post-conviction petition was barred by *res judicata*.[29] In this regard, the Ohio appeals court found that *both* of Hough's post-conviction petitions were submitted beyond the time allowed, and that Hough had advanced no good reason for a delayed or untimely filing.[30]

On the same day as this appellate opinion was entered, Hough filed an appeal from the earlier decision of the trial court to deny the motion to supplement the post-conviction petition.[31] This appeal was dismissed *sua sponte* for lack of a final appealable order.[32] Hough sought to appeal that decision to the Supreme Court of Ohio,[33] but, on November 16, 2011,

---

[26] *Id.*, at 472.

[27] *Id.*, at 477.

[28] *Id.*, at 479, 480, 483, and 495.

[29] *Id.*, at 511-19.

[30] *Id.*, at 514-17.

[31] *Id.*, at 520.

[32] *Id.*, at 521.

[33] *Id.*, at 522.

-10-

the Court denied leave to appeal, dismissing the matter as not involving any substantial constitutional question.[34]

### D.    Rule 26(B) application to re-open the direct appeal

While the post-conviction petition and related motions were pending, Hough, *pro se*, filed an application under Rule 26(B) to re-open his direct appeal.[35] In his brief, Hough argued that appellate counsel was ineffective for failing to raise the following two assignments of error:

1.    Prosecutorial misconduct directly contributed to the sentence of the Defendant-Appellant.

2.    Trial counsel rendered ineffective assistance in its deficient explanation of forensic evidence, its relevant testimony and its failure to recognize prosecutorial misconduct.[36]

After the State filed a responsive brief,[37] the Ohio appeals court denied the application to re-open.[38]

Hough, *pro se*, then appealed that decision to the Supreme Court of Ohio,[39] raising the following two propositions of law:

---

[34] *Id.*, at 545.

[35] *Id.*, at 546.

[36] *Id.*, at 548-55.

[37] *Id.*, at 557.

[38] *Id.*, at 570.

[39] *Id.*, at 581.

-11-

> I.  Appellate counsel was ineffective for not claiming that prosecutorial misconduct directly contributed to the sentence of the Defendant-Appellant.
>
> II.  Appellate counsel was ineffective nor not claiming trial counsel rendered ineffective assistance in its deficient explanation of forensic evidence, its relevant testimony and its failure to recognize prosecutorial misconduct.[40]

After the State waived the filing of a response,[41] the Supreme Court of Ohio dismissed the appeal on August 24, 2011.[42]

## E.  Motion for a writ of mandamus and/or procedendo; delayed application for reconsideration of direct appeal

As part of numerous additional actions, Hough, with the intent of requiring the trial court to issue final appealable orders regarding denial of the motions to recuse and to supplement the post-conviction petition, petitioned the appeals court for a writ of mandamus and/or procedendo. The Ohio court denied the petition,[43] holding that neither mandamus nor procedendo were available remedies for the situation Hough addressed.[44]

Hough appealed that decision to the Supreme Court of Ohio,[45] raising a single proposition of law:

---

[40] *Id.*, at 584.

[41] *Id.*, at 612.

[42] *Id.*, at 613.

[43] *Id.*, at 614.

[44] *Id.*, at 617-20.

[45] *Id.*, at 633.

-12-

Defendant-Appellant Terrance Hough has a clear, legal right to a final appealable order that complies with R.C. § 2505.02 and R.C. § 2953.02, regarding the denial of his Motion for Judge Shirley Strickland Saffold to Recuse Herself; and the denial of his Motion to Supplement the Petition for Post Conviction Relief, so he may pursue right of appeal.[46]

Following a responsive brief from the State,[47] on January 10, 2012, the Supreme Court of Ohio affirmed the judgment of the appeals court.[48]

Approximately three month after this decision of the Ohio Supreme Court, Hough, *pro se*, filed a motion with the Ohio appeals court for reconsideration of its June, 18, 2010, decision to affirm his sentence, as well as a delayed application for reconsideration of that same decision.[49] The Ohio appeals court denied the delayed application for reconsideration.[50]

Hough appealed this decision to the Ohio Supreme Court,[51] which then, on July 5, 2012, denied leave to appeal, dismissing the matter as not involving any substantial constitutional question.[52]

---

[46] *Id.*, at 634.

[47] *Id.*, at 684.

[48] *Id.*, at 694.

[49] *Id.*, at 695.

[50] *Id.*, at 710.

[51] *Id.*, at 711.

[52] *Id.*, at 756.

**F.      Other filings**

From shortly after his sentencing in 2010 through late 2013, Hough filed numerous motions with the trial court on various matters not detailed above, which motions were then denied and the denials frequently, but not always, followed by appeals which uniformly affirmed the actions of the trial court. Because these proceedings do not directly affect the present petition for habeas relief, nor substantially add to the history already recited here, the detailed recitation of these motions and their resolutions set forth by the State is noted and incorporated by reference.[53]

**G.      Federal habeas petition**

After originally filing his petition on November 16, 2012,[54] Hough then attempted to stay proceedings here pending the exhaustion of state remedies.[55] This Court denied that motion, but dismissed the petition without prejudice to later refiling, ruling that the statute of limitations would be equitably tolled during the pendency of the remaining state court proceedings if Hough moved to reopen the petition within 30 days of the conclusion of the state proceedings.[56]

-----

[53] ECF # 17 at 19-24.

[54] ECF # 1 at 49. This is the date Hough submitted the petition to the prison mail system and so is the date it is deemed filed.

[55] ECF # 2.

[56] ECF # 4.

Pursuant to that Order, on October 23, 2013, Hough moved to reopen his habeas case,[57] and the motion was granted.[58] Hough then sought,[59] and received,[60] leave to file an amended petition. Accordingly, Hough filed this amended petition for habeas relief on November 12, 2013.[61] In his petition he raises the following grounds for relief:

> **Ground One:** The Cuyahoga County, Court of Appeals unreasonably applied *Jackson v. Virginia* (1979), 443 U.S. 307; and *In re Winship* (1970), 397 U.S. 358, when it determination [sic] that the government adduce evidence beyond a reasonable doubt that the element of "prior and calculation and designed" [sic] existed for the three convictions of Aggravated Murder (Ohio Revised Code § 2903.01(A)).[62]

> **Ground Two:** The Cuyahoga County, Court of Appeals unreasonably applied *Strickland v. Washington* (1984), 466 U.S. 688, when it turned *Strickland* reasonable probability test into a test of sufficiency.[63]

> **Ground Three:** Prosecutorial misconduct directly contributed to the sentence of the petitioner.[64]

---

[57] ECF # 5.

[58] ECF # 6.

[59] ECF # 8.

[60] ECF # 9.

[61] ECF # 10 at 49.

[62] *Id.* at 8.

[63] *Id.* at 14.

[64] *Id.* at 19.

**Ground Four:** Trial counsel rendered ineffective assistance in its deficient explanation of forensic evidence, its relevant testimony and its failure to recognize prosecutorial misconduct.[65]

**Ground Five:** Petitioner was denied effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution.[66]

**Ground Six:** The Cuyahoga Couty, Court of Appeals unreasonably applied *Liteky v. United States* (1994) 510 U.S. 540, when it determined that Petitioner's due process rights were not violated when the result of impermissible appearance of judicial bias led to an unfair trial impossible.[67]

**Ground Seven:** The Cuyahoga Count, Court of Appeals unreasonable applied *Blockburger v. United States* (1932), 284 U.S. 299, when it determined that Petitioner's rights to be free from double jeopardy when his offenses were allied.] [sic][68]

As noted above, the State argues that the petition should be dismissed in part and denied in part.[69] As also noted above, Hough, in his traverse, concedes that the portion of his petition the State maintains is procedurally defaulted is indeed defaulted.[70]

---

[65] *Id.* at 26.

[66] *Id.* at 31.

[67] *Id.* at 34.

[68] *Id.* at 43.

[69] ECF # 17.

[70] ECF # 22.

# Analysis

**A.  Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.  There is no dispute that Hough is currently in state custody as a result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, Hough meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[71]

2.  There is also no dispute, as detailed earlier, that the petition here was timely filed under the applicable statute.[72] Hough originally filed his petition here on November 16, 2012, and, pursuant to this Court's Order, equitably tolled the period between that date and the date of filing the present amended petition. Thus, because Hough's timely filed Rule 26(B) application was not finally adjudicated until August 24, 2011, when the Ohio Supreme Court dismissed Hough's appeal, the original filing date here of November 29, 2012, is within one year of the date of the August 24, 2011, Ohio Supreme Court decision, plus an addition 90 days for potentially seeking a writ of certiorari from that decision.

3.  In addition, Hough states,[73] and my own review of the docket in this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[74]

---

[71] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[72] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[73] ECF # 1 at 46.

[74] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

4.      Moreover, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[75]

5.      Finally, Hough is not represented by counsel, and he has not requested the appointment of counsel.[76] Hough, at least conditionally, has sought an evidentiary hearing "if" this Court deems one necessary. The Supreme Court's holding in *Cullen v. Pinholster*[77] has made it clear that the federal habeas court is limited to the record before the state court as claims that were adjudicated on the merits in the state court.[78] Inasmuch as all the claims remaining in this petition were adjudicated on the merits in the Ohio courts, there is no basis for conducting an evidentiary hearing. Further, without an evidentiary hearing,[79] Hough has advanced no other reasons to support the appointment of an attorney. In particular, all the claims here have been exhaustively briefed through one full round of Ohio's appellate review procedure, and Hough's voluminous and detailed petition and traverse indicate that he is more than able to grasp the issues involved in his petition and ably argue his legal positions.

**B.      Standard of review – AEDPA review**

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute provides that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly

---

[75] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[76] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[77] *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388 (2011).

[78] *Id.* at 1398.

[79] Conducting an evidentiary hearing requires the appointment of counsel. Habeas Rule 8(c).

-18-

established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[80]

In applying that statute, the well-known teachings of *Williams v. Taylor* guide the federal habeas court.[81] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[82] *Williams* further holds that a state court decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[83]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[80] 28 U.S.C. § 2254(d).

[81] *Williams v. Taylor*, 529 U.S. 362 (2000).

[82] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[83] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

erroneously or incorrectly."[84] Rather, the federal habeas court may disturb the state court holding only upon showing that it was "objectively unreasonable."[85]

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[86] and "highly deferential" to the decision of the state court.[87] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[88] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[89]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[90]

---

[84] *Williams*, 529 U.S. at 411.

[85] *Id.* at 409.

[86] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[87] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[88] *Richter*, 131 S. Ct. at 786.

[89] *Id.* at 786-87.

[90] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

As the Supreme Court observed in *Harrington v. Richter*, a state court need not state its reasons or explain its conclusion when it adjudicates a federal claim on the merits.[91] When a criminal defendant presents a federal claim to the state court, which then denies it without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[92] In such circumstances, the federal habeas court must give deference to the decision of the state court.[93]

## C.     Application of standard

### 1.     *Ground one – raising a sufficiency of the evidence claim – should be denied on the merits after AEDPA review because the decision of the Ohio appeals court in this regard was not an unreasonable application of the clearly established federal law of Jackson v. Virginia.*[94]

In his habeas petition, as in his argument to the Ohio courts, Hough essentially contends that the evidence was not sufficient to show any prior consideration or plan to kill but rather supports a finding only that the decision to shoot was instantaneous, as reflected in Hough's comment upon arrest that he just "snapped."

The clearly applicable federal law in this regard is well-settled.

In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him,

---

[91] *Richter*, 131 S. Ct. at 784-85.

[92] *Id.*; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[93] *Brown*, 656 F.3d at 329.

[94] *Jackson v. Virginia*, 443 U.S. 307 (1979).

we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).[95]

The Ohio appeals court, addressing the same argument as is presented here, first correctly found and re-stated the clearly established federal law of *Jackson* as incorporated in the Ohio case of *State v. Jenks*.[96] The court then set out the necessary elements under Ohio law of the offense of aggravated murder, as well as the factors that Ohio juries may consider to determine if a murder was committed with prior calculation and design.[97] As detailed by the appeals court, these factors include:

> "[W]hether the accused knew the victim prior to the crime, as opposed to a random meeting, and if the victim was known to him whether the relationship had been strained; whether thought and preparation were give by the accused to the weapon he used to kill and/or the site on which the homicide was to be committed as compared to no such thought or preparation; and

---

[95] *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

[96] ECF # 17-2, at 167 (citing *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991)).

[97] *Id.*, at 168-69 (citations omitted).

whether the act was drawn out over a period of time as against an almost instantaneous eruption of events. These factors must be considered and weighed together and viewed under the totality of all circumstances of the homicide."[98]

Then, the appeals court addressed the evidence in Hough's case in light of the permissible factors:

In *Jenkins*, a major factor to the finding that the state did not offer sufficient evidence of prior calculation and design was that "the defendant did not know the victim, that there had been no previous disagreement, and that the meeting was at random." Here, appellant knew the victims. He had expressed his displeasure with the gatherings that took place at the Feichtners' home over the years. He had a strained relationship with the Feichtners spanning some five years and included 12 complaints to the police.

Appellant also showed deliberation in his choice of a weapon. His wife testified that there were several guns in various locations throughout their home. She further testified that shortly before the shootings, she heard appellant get out of bed, go into the kitchen, then walk out the front door. Appellant had the choice of several firearms to take out of is house that night. He could have chosen the closest handgun located in the closet in his bedroom, but he did not. He opted to go out of his way to the kitchen where he kept a handgun on the top shelf in the cabinet next to the refrigerator. This indicates that appellant made a deliberate choice of which weapon to use to carry out his plan.

Testimony was adduced that showed appellant exited his house after the small fireworks display was over and after the neighbors across the street, who had been watching the display, all returned to their homes. He then walked across his yard and confronted Jacob, a person with whom he had a strained relationship over the years, and stated something to the effect of "You fucking kids won't be doing this shit anymore." His actions took only a short amount of time, but, on the whole, the evidence shows a plan where appellant intended

_____

[98] *State v. Jenkins*, 48 Ohio App. 2d 99, 102, 355 N.E.2d 825, 828 (1976).

to kill those making noise in the yard next to his house and anyone who could identify him as the gunman.[99]

In addition to this exhaustive review of the evidence in light of the delineated factors, the Ohio court proceeded to review Ohio law on the question of proving prior calculation and design even in cases where the killings, as here, happened quickly:

> "[P]rior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley*, 93 Ohio St.3d 253, 264, 2001-Ohio-1340, 754 N.E.2d 1129. In *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-91, 842 N.E.2d 996, the Ohio Supreme Court held that one's actions could display a plan to kill. In *Conway*, upon hearing that his brother had been stabbed, Conway retrieved a gun from his car and began shooting at the alleged perpetrator. The Court held that "[a]lthough they took only a few minutes, Conway's actions went beyond a momentary impulse and show that he was determined to complete a specific course of action. Such facts show that he had adopted a plan to kill." Id. at ¶46. In the instant case, appellant conceived a plan and to kill and acted on that plan with brutal composure.

> Evidence of a preconceived plan is not the only way to prove the element of prior calculation and design. The state can also offer "evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill. See, e.g., *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81; [*State v. Goodwin* (1999)], 84 Ohio St.3d 331, 703 N.E.2d 1251; *State v. Campbell* (2000), 90 Ohio St.3d 320, 738 N.E.2d 1178." *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶19. This "allows the state to satisfy its burden by showing that the murder was executed in such a manner that circumstantially proves a preconceived notion that the victim would be killed regardless of the situation. [*State v. Taylor* (1997),] 78 Ohio St.3d 15, 676 N.E.2d 82; *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685. Thus, if the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury many infer prior calculation and design. See [*State v. Campbell* (2000), 90 Ohio St.3d 320, 330], 738 N.E.2d 1178; *Palmer* at 570, 687 N.E.2d 685;

---

[99] ECF # 17-2, at 169-70 (citations omitted).

*Taylor* at 21, 676 N.E.2d 82; *State v. Mardis* (1999), 134 Ohio App.3d 6, 19, 729 N.E.2d 1272." Id. at ¶33.[100]

Finally, the court reviewed the evidence in Hough's case in light of the Ohio law just cited, concluding that it was sufficient such that a reasonable trier of fact could have found Hough guilty:

> Here, appellant shot three people multiple times at close range. His statement upon first confronting Jacob can properly be construed by a reasonable trier of fact as evidencing his intent to kill. These execution-style killings bespeak aforethought and provide circumstantial evidence that appellant acted with prior calculation and design.
>
> Appellant argues that he "just snapped" when he heard Jacob's comment and made an instantaneous decision to kill. This argument is contradicted by his actions of selecting a gun from inside his home and taking it outside after those watching the fireworks across the street had gone back inside their homes. This argument is also undercut by the comment appellant made before anyone addressed him.
>
> The evidence in the record could convince a reasonable trier of fact that the element of prior calculation and design had been met by the state. Appellant's convictions for aggravated murder are supported by sufficient evidence, and therefore, his first assignment of error is overruled.[101]

In considering the extensive analysis of the Ohio court in light of the clearly established federal law of *Jackson*, and in light of Hough's arguments, it is plain that there was more than sufficient evidence from which any rational trier of fact could have found that Hough acted with prior calculation and design, as understood in Ohio law, in committing the multiple murders in this case.

---

[100] *Id.*, at 170-72.

[101] *Id.*, at 172.

-25-

Because deference is owed here first to the findings of the jury, who saw the evidence, and secondly to the judgment of the Ohio appeals court, which reviewed the jury's findings under the clearly established federal law, ground one should be denied on the merits because the decision of the Ohio appellate court was not an unreasonable application of *Jackson*.

**2.**     ***Ground two – ineffective assistance of trial counsel – should be denied on the merits after AEDPA review because the decision of the Ohio appeals court was not an unreasonable application of the clearly established federal law of Strickland v. Washington.***[102]

In his petition, as in his arguments to Ohio courts, Hough maintains that he received ineffective assistance from his trial counsel. As he did to the Ohio courts, Hough asserts that his trial counsel failed to request a limiting instruction concerning the other firearms that were found in Hough's house and failed to object to: (1) questions directed to his wife concerning past instances of violence, (2) statements about Hough's temperament, (3) testimony about his prior  treatment of the victims and (4) portions of the prosecution's closing argument.

The Ohio appeals court began by properly identifying *Strickland* as the clearly established federal law applicable to this claim, and then analyzed each of the purported instances of ineffective assistance, concluding in some cases that no violation of any duty of counsel's had been shown, and in other cases, that no prejudice resulted from counsel's action or inaction, thus precluding a finding of ineffective assistance.

---

[102] *Strickland v. Washington*, 466 U.S. 668 (1984).

In another detailed review of the facts in light of the relevant law, the Ohio court first set out the applicable law as follows:

> Finally, appellant argues that he "was denied effective assistance of counsel at trial." He claims that trial counsel failed to request a limiting instruction for the other firearms found at his home, that counsel failed to object to the questioning of his wife about prior instances of violence, statements about his temperament, testimony regarding his treatment of the victims, and the state's closing arguments.
>
> In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407.
>
> In reviewing a claim of ineffective assistance of counsel, it *must* be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. *State v. Smith* (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128; *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 209 N.E.2d 164.
>
> The Ohio Supreme Court held in *State v. Bradley* (1989), 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373, that "'[w]hen considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. This standard is essentially the same as the one enunciated by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668 * * *."
>
> "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United*

*States v. Morrison*, 449 U.S. 361, 364-365 [101 S.Ct. 665, 667-68, 66 L.Ed.2d 564] (1981).' *Strickland*, supra, 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' *Strickland*, supra, at 694, 104 S.Ct. at 2068." *Bradley* at 142.[103]

The court then fully considered all of Hough's claimed ineffective assistance arguments according the rubric it delineated earlier:

Appellant first argues that counsel failed to ask for a limiting instruction for the other firearms recovered from his home. As explained above, this was relevant to show a conscious choice of which firearm appellant chose to use to carry out his plan. A limiting instruction would have been properly denied by the trial court as this was not "other acts" evidence as appellant claims.

Appellant also argues that trial counsel failed to object to several portions of testimony and a statement by the prosecutor in closing arguments. He alleges that the testimony regarding the injuries and subsequent treatment of Donald Walsh were improper victim-impact evidence presented in the guilt phase of his trial and should have been objected to. However, as previously noted, the Ohio Supreme Court has held that "[e]vidence relating to the facts attendant to the offense is 'clearly admissible' during the guilt phase, even though it might be characterized as victim-impact evidence." *State v. McKnight*, supra.

The wounds appellant inflicted on Donald Walsh are facts attendant to the offense that show he was shot and seriously wounded by appellant. See *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶81. While some of the testimony regarding the follow-up care and search for a bone donor may have been beyond the permissible scope, appellant has failed to point to how this testimony prejudiced him in light of the overwhelming evidence of his guilt in the record.

Appellant also takes issue with counsel's failure to object to other testimony indicating that he was "such a hot head" and that he "belonged in the country."[FN2] Again, appellant has failed to demonstrate that the exclusion

---

[103] ECF # 17-2, at 179-80.

of this testimony would have had any bearing on the outcome of the trial. *State v. Hutton*, 100 Ohio St.3d 176; 2003-Ohio-5607, 797 N.E.2d 948, ¶44. This brief testimony did not contribute to the finding of guilty given the extensive evidence against appellant.

> [FN2]Appellant argues this testimony was a veiled assertion that he is racist.

Appellant also argues that the state made inappropriate comments during closing arguments, which his trial counsel failed to object to. In closing arguments, the prosecutor commented on the character of the people appellant had killed. However, "a reasonable attorney may decide not to interrupt his opponent's closing argument. *State v. Keene* [], 81 Ohio St.3d 646, 668, [1998-Ohio-342,] 693 N.E.2d 246. Objections can "'disrupt the flow of a trial'" and "'are considered technical and bothersome by the fact-finder.'" A decision not to interrupt during closing arguments reflects an 'objective standard of reasonable representation.'" (Internal citations omitted.) *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶154.

Finally, appellant complains that trial counsel was ineffective for not properly filing a motion to waive court costs. Appellant's attorney filed a motion to waive court costs based on appellant's indigency 16 days after the court imposed costs of $7,741.10. While appellant argues that once court costs are assessed the matter becomes res judicata,[FN3] in this case the court granted appellant's motion and the state failed to appeal. Therefore, appellant was not prejudiced by his trial counsel submitting the motion after sentencing had been imposed.

> [FN3]*State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589.[104]

As was the case with the prior ground for relief, there is a double-deference involved with the claims of ineffective assistance of trial counsel. First, deference is owed under *Strickland* to the actions and decisions of the attorney involved, who is presumed to have rendered competent service and to have made decisions for strategic reasons. Next, deference

---

[104] *Id.*, at 181-83.

is owed under AEDPA to the decision of the Ohio appeals court, which here properly identified the clearly established federal law and then applied it in a thorough and specific manner to the allegations.

Accordingly, pursuant to the applicable standard of review, ground two should be denied on the merits after AEDPA review because the decision of the Ohio appeals court was not an unreasonable application of the clearly established federal law of *Strickland*.

**3.** **Ground five – ineffective assistance of appellate counsel – should be denied on the merits because the decision of the Ohio appeals court in adjudicating this claim was an unreasonable application of the clearly established federal law of Strickland and Jones v. Barnes,[105] nor was it contrary to the clearly established federal law of Darden v. Wainwright.[106]**

Here, as he did in his application to reopen the appeal, Hough maintains that his appellate counsel was ineffective for not asserting on appeal a claim of prosecutorial misconduct and for not claiming that trial counsel should have objected to that misconduct and also should have better argued the forensic evidence that Hough believes shows the victims were "aggressively leaning forward" when shot, so supporting either some form of a self-defense argument or giving credence to Hough's theory that he instantaneously snapped.

The Ohio appeals court conducted a lengthy review of these claims, beginning with a review of the clearly established federal law, as that law has been adopted by the Supreme Court of Ohio:

---

[105] *Jones v. Barnes*, 463 U.S. 745 (1983).

[106] *Darden v. Wainwright*, 477 U.S. 168 (1986).

In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.

In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 104 S.Ct. at 2065.

Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes* (1983), 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996–Ohio–366, 672 N.E.2d 638.

Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's

performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.[107]

Next, the Ohio court carefully reviewed the claim that an argument should have been made on appeal concerning trial counsel's lack of objection to prosecutorial misconduct. In that regard, the appeals court first detailed the allegation, citing extensively to Hough's arguments, and then set forth the applicable law as to prosecutorial misconduct as it was then understood. The court then concluded by analyzing the facts of Hough's case in light of that law and then considering, under that analysis, if any grounds were present that support the claim that appellate counsel should have raise this issue on appeal. In its review, the court found as follows:

> In his first assignment of error, prosecutorial misconduct, Hough argues that the prosecution intentionally engaged in a course of conduct to use inflammatory language and to lie and distort the evidence to mislead the jury. Furthermore, the prosecution injected its own opinion into the trial. Indeed, this course of action so permeated the trial so as to render it unfair. Hough points to the prosecutor's language that he was a bully and a coward, that he had 45 minutes to plan his actions, that he always carried a gun with him, that he hated his neighbors and that he planned to kill them. Hough supports this argument by relying on the inconsistencies, discrepancies, and ambiguities of approximately 3,000 pages of transcript to show that the prosecutor did not have factual support for those assertions.[FN2] Thus, the prosecutor's actions were improper.
>
>> [FN2] Arguably, the prosecutor forcefully marshaled and argued the evidence in the record. Shooting people in the back is considered cowardly. Shooting unarmed people could be characterized as cowardly. Hough's wife testified that Hough kept loaded guns in the bedroom and the kitchen, that he had a permit to carry a concealed weapon, and that he kept one in his truck. It would be an inference from this testimony that the

---

[107] ECF # 17-3, at 573-74.

prosecutor would say that Hough takes guns with him wherever he goes. Similarly, there was ambiguity concerning the time between when the fireworks ended and the time of the shooting. One witness indicated that it was 11:48 when the fireworks stopped; thus, only 15 minutes lapsed between the fireworks and the shooting. Another witness testified that they got to the Feichtners at approximately 11:00, and the fireworks took only a short time. This would be more consistent with the prosecutor's statement that Hough had 45 minutes to make his plan.

The test regarding prosecutorial misconduct is whether the actions or remarks were improper, and, if so, whether they prejudicially affected the substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883. Moreover, this "must be considered in the light of the whole case." *State v. Maurer* (1984), 15 Ohio St.3d 239, 473 N.E.2d 768, (1985), cert. denied 472 U.S. 1012. A prosecutor should pursue the office's duties with earnestness and vigor and use every legitimate means to obtain a just conviction. A prosecutor may argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence. *Bates v. Bell* (C.A.6, 2004), 402 F.3d 635, 646. A prosecutor may strike hard blows, but he may not strike foul ones. *Berger v. United States* (1935), 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314. Foul blows include personally vouching for the credibility of a witness, launching ad hominem attacks against the defendant or his lawyer, relying on improper evidence, relying on evidence not in the record, critically commenting on the defendant's exercise of his rights such as the right to remain silent or the right to a jury trial, and deliberately misleading the jury. Any improper actions or comments by a prosecutor should be examined by four factors: (1) the likelihood that the remarks tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidently made; and (4) the total strength of the evidence against the defendant. *Bates*, 402 F.3d at 647.

However, a review of appellate counsel's brief reveals that he implicitly argued prosecutorial misconduct because he attacked the admission of other acts evidence and victim impact evidence, which the prosecutor elicited. Furthermore, in his ineffective assistance of trial counsel argument, appellate counsel asserted that trial counsel should have objected to the prosecutor eliciting such evidence. Appellate counsel also faulted trial counsel for failing to object to portions of the prosecutor's closing argument which played upon

the jury's sympathy, specifically what great people the victims were and other considerations outside of the evidence. Appellate counsel invoked the proper standard for prosecutorial misconduct: "The improper argument deprived Hough of a fundamentally fair trial." (Pg. 26 of appellant's brief.) Appellate counsel chose to argue other acts evidence and victim impact evidence directly, rather than through the lens of prosecutorial misconduct, and he chose to argue the prosecutor playing upon the jury's sympathies through ineffective assistance of trial counsel, rather than arguing prosecutorial misconduct on possible improper inferences. These are questions of strategy and tactics which this court will not second guess.[108]

Next, the Ohio appellate court denied Hough's claim as to purported ineffective assistance for failing to argue trial counsel's alleged ineffectiveness in arguing the forensic evidence:

> Hough's second assignment of error is ineffective assistance of trial counsel because counsel did not properly argue the forensic evidence and did not raise the issue of prosecutorial misconduct. The gravamen of the first part of this argument is that one of the bullets that hit Jacob had a significant downward trajectory through his body. Hough argues that this shows that Jacob was aggressively leaning toward him when the first bullet struck him; thus, indicating that he shot in self-defense or showed further evidence that "he snapped." However, the coroner testified that he could not determine the order of the bullets that entered Jacob. Rather than rely on this speculation, appellate counsel chose to argue that Jacob's verbal response to Hough—to put the gun down and go home—was the catalyst of the snap. Again, pursuant to the Supreme Court's admonitions, this court will not second guess counsel's strategy and tactics.

> As for the second part of this argument, that trial counsel was ineffective for not arguing prosecutorial misconduct, this court has already concluded that appellate counsel did include that point and did so within the bounds of professional judgment.

> Finally, Hough has not established prejudice. In its first opinion, this court stated that overwhelming evidence of appellant's guilt existed in rejecting his assignments of error on sufficiency of the evidence, improper

---

[108] *Id.*, at 574-77.

-34-

evidence and ineffective assistance of trial counsel. Arguing speculation on forensic evidence or including a more direct, comprehensive argument on prosecutorial misconduct would not have changed the result.[109]

I note here, as alluded to above, that the Ohio appeals court opinion in this case concerning prosecutorial misconduct relied, at least in part, on precedent that applied before the Supreme Court case of *Parker v. Matthews*.[110] As the State notes, *Parker* had the effect of overruling the Sixth Circuit authority that was the foundation for the Ohio appellate opinion here, which authority prescribed a four-part test for testing remarks by the prosecution,[111] and mandating that only the test in *Darden v. Wainwright*[112] is to be utilized.

*Darden* holds that "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned," but that misconduct is show only when the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."[113] *Darden* also cautioned that the appropriate standard of review in a habeas matter is "the narrow one of due process, and not the broad exercise of supervisory power."[114] Indeed, the Supreme Court has also held that a conviction should not be lightly overturned

---

[109] *Id.*, at 577-79.

[110] *Parker v. Matthews*, __ U.S. __, 132 S.Ct. 2148 (2012).

[111] *Bates v. Bell*, 402 F.3d 635 (6th Cir. 2005).

[112] *Darden v. Wainwright*, 477 U.S. 168 (1986).

[113] *Id.* at 181.

[114] *Id.*

on the basis of prosecutorial comments viewed in isolation, since only by viewing them in context can it be determined if those comments infected the entire trial with unfairness.[115]

Here, the Ohio court correctly located the clearly established federal law regarding ineffective assistance of appellate counsel in *Strickland* and *Jones*. To the extent that the Ohio court, in applying that law to an individual claim relied on a subsequently overruled statement of the relevant law, its conclusion nevertheless remains valid when assessed under the appropriate standard. Thus, in this respect, the conclusion is not contrary to the *Darden* standard.

This is not a situation, as was discussed in *Teague v. Lane*,[116] where the Supreme Court has declared a new federal law on either the question of ineffective assistance or prosecutorial misconduct, which new law would not be retroactive to Hough's case unless specifically provided. Rather, the law on both ineffective assistance and prosecutorial misconduct remains unchanged. The error corrected by *Parker* inhered in the Sixth's Circuit's use of an alternative formulation for determining what constitutes prosecutorial misconduct instead of the existing clearly established federal law of *Darden*.

Thus, the state opinion here is properly analyzed as having employed the correct, existing federal law of ineffective assistance, and the result in the example of alleged prosecutorial misconduct is viewed as to whether it is contrary to the law expressed in *Darden*.

---

[115] *United States v. Young*, 470 U.S. 1, 11 (1985).

[116] *Teague v. Lane*, 489 U.S. 288 (1989).

Because the analysis of this singular example of alleged misconduct set out in the Ohio opinion does not reflect anything that infected the entire trial with unfairness, I recommend finding that this portion of the opinion was not contrary to *Darden*, while the analytical framework from Strickland and Jones produced an overall result that was not an unreasonable application of this clearly established federal law. Ground five should therefore be denied.

**4.      *Ground four – judicial bias – should be denied on the merits because the state court decision in this regard was not an unreasonable application of the clearly established federal law of Liteky v. United States.*** [117]

This is another complex argument by which Hough argues that the trial judge was prejudiced against him. Although the analysis of the state court in this regard is lengthy, it is set forth below both for purposes of fully detailing the factual background of the claim and detailing the reasoning of the Ohio court in denying it:

> {¶ 9} In his first assignment of error, Hough sets forth a due process argument, asserting that the trial court erred in denying his motion for a new trial, because Judge Saffold's judicial bias had deprived him of a fair trial. In support of his assertion that his trial was unfair due to judicial bias, Hough makes three allegations: (1) the Ohio Supreme Court decision to remove Judge Saffold from any further postconviction proceedings was based on Judge Saffold's online comments that demonstrated a bias in favor of Hough receiving the death penalty; (2) Judge Saffold had denied Hough's Crim.R. 29 motion on the element of "prior calculation and design," because she had a personal bias in favor of Hough receiving the death penalty; and (3) Judge Saffold placed an unreasonable cap on the amount of fees afforded to Hough for experts, because she sought a guilty verdict.

---

[117] *Liteky v. United States*, 510 U.S. 540 (1994).

{¶ 10} Due process requires that a criminal defendant be tried before an impartial judge. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34. If the record evidence indicates that the trial was infected by judicial bias, the remedy is a new trial. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 2. Judicial bias is defined as " 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation*658 of a fixed anticipatory judgment on the part of the judge * * *.' " *Id.* at ¶ 48, quoting *Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus. Judicial bias is " 'contradistinguished from an open state of mind which will be governed by the law and the facts.' " *Id.*, quoting *Pratt* at paragraph four of the syllabus.

{¶ 11} If the trial judge forms an opinion based on facts introduced or events occurring during the course of the current or prior proceedings, this does not rise to the level of judicial bias, " 'unless [the opinions] display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Dean*, ¶ 49, quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Accordingly, " 'judicial remarks [made] during the course of trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.' " *Id.*, quoting *Liteky* at 555, 114 S.Ct. 1147, 127 L.Ed.2d 474. In contrast, such remarks, " '*may* [support a bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* [support a bias challenge] if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.' " (Emphasis sic.) *Id.*, quoting *Liteky* at 555, 114 S.Ct. 1147, 127 L.Ed.2d 474.

{¶ 12} The state mistakenly asserts that Hough's due process argument is governed by Crim.R. 33. But in requesting a new trial, Hough made two separate arguments: a constitutional, due process argument and an argument under the Ohio Rules of Criminal Procedure. The analysis is different for each, and so we decline to address Hough's due process argument under the standards set forth under Crim.R. 33. Rather, we follow the law as set forth above.

{¶ 13} Hough's first allegation of judicial bias pertains to the comment posted to cleveland.com from Judge Saffold's email account on her court-issued computer. The comment stated the following:

-38-

> If a black guy had massacred five people then he would've received the death penalty. A white guy does it and he gets a pat on the hand. The jury didn't care about the victims. They were set to cut him loose from day one. All of them ought to be ashamed.

Cleveland.com, *Anonymous online comments are linked to the personal e-mail account of Cuyahoga County Common Pleas Judge Shirley Strickland Saffold*, http://blog.cleveland.com/metro/2010/03/post_258.html (accessed Feb. 27, 2013). According to Hough's affidavit seeking disqualification, the comment was posted on the same day that Judge Saffold imposed Hough's sentence, May 22, 2008. But the fact that this comment was made from Judge Saffold's computer did not come to light until much later. The story broke on cleveland.com on March 26, 2010. The Ohio Supreme Court subsequently ordered Judge Saffold removed from any further postconviction proceedings.

{¶ 14} Hough argues that this comment evidences Judge Saffold's prejudice and bias for a specific result in Hough's case: that she was biased in favor of Hough receiving the death penalty. The comment, coming from a presiding judge, is unprofessional and inappropriate, to say the least. We also note that the comment can be fairly characterized as extrajudicial if it is based on a judge's belief that, as a white defendant, the jury treated Hough more leniently than it would have had Hough been a black defendant.[FN1] Hough's race is not relevant to the crimes for which he was charged and convicted.

> [FN1] Judge Saffold asserts that she did not send the comment; rather, it was her daughter. The Ohio Supreme Court did not make a finding on this issue.

{¶ 15} Although inappropriate and arguably extrajudicial, the comment does not require us to vacate Hough's conviction and order a new trial for the obvious reason that Hough did not receive the death penalty. Judge Saffold did not exhibit any pro-death-penalty bias when she sentenced Hough in accordance with the jury's recommendation for a life sentence. We also find the timing of the comment relevant as it was posted after the sentence was rendered. In arguing that the timing of the comment is irrelevant, Hough alleges that the Ohio Supreme Court's Judgment Entry removing Judge Saffold from any further proceedings stated that "[t]he timing of the comments does not remove the taint of impropriety * * *." But Hough's argument takes the court's quote out of context. The full quote is that "[t]he timing of the comments does not remove the taint of impropriety *where, as here, Hough has*

-39-

*a pending postconviction relief proceeding before Judge Saffold*." (Emphasis added.) The court's statement evidences a concern about removing the appearance of impropriety from future proceedings; the court's statement was not directed towards proceedings that took place before the comment was posted, and the statement sheds no light on whether the court would find that the underlying trial proceedings were corrupted by judicial bias.

{¶ 16} To be clear, our decision does not stand for the proposition that a due process, judicial-bias claim is subject to harmless-error analysis. The Ohio Supreme Court's decision in *Dean* appears to indicate that a defendant who successfully shows judicial bias need not demonstrate prejudice before obtaining a new trial. The *Dean* Court determined that the trial judge harbored bias and, even after acknowledging that "substantial evidence" existed that the defendant "participat[ed] in a senseless murder," the court concluded that it was "required to reverse the convictions, vacate the death sentence imposed * * * and remand th[e] case for a new trial." 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, at ¶ 2. The *Dean* Court acknowledged, however, that its decision was based on "the highly extraordinary facts of [that] case."[FN2] *Id.*

> [FN2] In *Dean*, the trial court made a number of unreasonable, adverse rulings all running against the defendant, some of which affected "crucial decisions," such as whether the defendant would testify on his own behalf. During trial, the court displayed obvious animosity towards defense counsel, such that defense counsel asked to be removed for concern that they could not adequately represent the defendant. The trial court refused to let counsel withdraw and refused to let the defendant represent himself. The defendant was convicted and sentenced to death. After trial, the trial court initiated criminal contempt proceedings against the defendant's counsel that revealed that the trial court harbored a bias towards counsel that predated the trial. When examined as a whole, the Ohio Supreme Court determined that the trial court's earlier assurances that it would remain unbiased were untrue.

{¶ 17} Our decision today is not based on harmless error. Rather, we conclude that Judge Saffold's decision to follow the jury's recommendation and to sentence Hough to a life sentence, regardless of the comment posted from her court-issued computer, is highly relevant evidence that she was not so biased against Hough as to render the trial fundamentally unfair.

-40-

{¶ 18} We also reject Hough's argument that Judge Saffold's decision to deny Hough's Crim.R. 29 motion on the element of "prior calculation and design" was based on a personal bias in favor of Hough receiving the death penalty. In order to review the merits of this argument we would have to review the trial transcript, but Hough has failed to file a trial transcript. Under settled authority, the appellant has the duty to file the transcript or such parts of the transcript as are necessary for evaluating the lower court's decision. App.R. 9(B); *State v. Peterson*, 8th Dist. No. 96958, 2012-Ohio-87, 2012 WL 112665, ¶ 7; *State v. Turner*, 8th Dist. No. 91695, 2008-Ohio-6648, 2008 WL 5258483, ¶ 13. Failure to file the transcript, when necessary, prevents us from reviewing an appellant's assignments of error. *Peterson* at ¶ 7; *Turner* at ¶ 13. Because Hough's argument regarding Judge Saffold's Crim.R. 29 ruling would require us to review the trial transcript, and because Hough failed to file the trial transcript, we cannot review this argument.

{¶ 19} With regard to the expert fees, Judge Saffold granted every one of Hough's motions for expert assistance, including a mitigation expert, a forensic toxicologist, a neuropsychologist, a firearms expert, an investigator, a psychiatrist, and a clinical psychologist. The docket reflects that the court applied its normal fee schedule. While Hough may believe the fee schedule was unreasonable, Judge Saffold's decision does not evidence bias, because the fees allotted were consistent with the judge's normal practices. Accordingly, we do not find judicial bias in this decision. Because Hough cannot demonstrate that his trial was fundamentally unfair as a result of judicial bias, we overrule the first assignment of error.[19]

Because the state court properly found and applied the clearly established federal law of *Liteky* concerning judicial bias, this ground should be denied on the basis that this decision was not an unreasonable application of that law.

**5.      *Having waived further review of grounds three, four, and seven, these grounds should now be dismissed.***

As noted above, Hough has waived further consideration of these grounds as procedurally defaulted. Accordingly, I recommend dismissing grounds three, four, and seven.

---

[19] ECF # 17-4, at 983-90.

-41-

**6.** ***As noted above, there is no basis for holding an evidentiary hearing, nor for the appointment of counsel.***

As was discussed earlier in the preliminary observations, Hough has shown no grounds for conducting an evidentiary hearing, and so no basis for the appointment of counsel. Accordingly, to the extent that Hough seeks either a hearing or the appointment of counsel, I recommend that such motions be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition of Terrance Hough for a writ of habeas corpus be dismissed in part and denied in part, as is more fully set forth above, and that any motions for an evidentiary hearing and/or the appointment of counsel be denied.

Dated: April 13, 2015                     s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[20]

---

[20] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-42-